

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SMITHFIELD FOODS, INC.
and SMITHFIELD PACKAGING
COMPANY,

     Plaintiffs,

v.                   Civil Action No. 3:07cv641

UNITED FOOD AND COMMERCIAL
WORKERS INTERNATIONAL UNION,
<u>et al.</u>,

     Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the DEFENDANTS' JOINT MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (Docket No. 25) filed by Defendants United Food and Commercial Workers International Union ("UFCW"), United Food and Commercial Workers Local No. 400 ("Local 400"), Change to Win, Research Associates of America, Jobs with Justice, Gene Bruskin, Joseph Hansen, William T. McDonough, Leila McDowell, Patrick J. O'Neill, Andrew L. Stern, and Tom Woodruff (collectively "Defendants"). For the reasons set forth below, the motion to dismiss will be denied in part and granted in part.

### STATEMENT OF FACTS

Smithfield Foods, Inc. is a Virginia corporation with its principal place of business in Smithfield, Virginia. (Amended Compl. at ¶ 8.)  Smithfield Packaging Company is a wholly-owned subsidiary of Smithfield Foods.[1]  (Id. at ¶ 9.) Smithfield's largest asset is its pork processing plant in Tar Heel, North Carolina.   (Id.)   The Tar Heel plant employs 4,650 hourly employees, and according to the Complaint, the Unions have been trying unsuccessfully to become the bargaining representative for over a decade. Smithfield also alleges that the Defendants view the employees of the Tar Heel plant as a potentially massive collective bargaining unit, representation of which will produce for the Unions significant monetary benefits and power.

The National Labor Relations Act ("NLRA") 29 U.S.C.A § 158(a)(3) permits a union to become a collective bargaining representative for an employer's employees if the union prevails in an election certified by the National Labor Relations Board ("NLRB").   The NLRA also permits an employer, under certain circumstances, to voluntarily recognize a union with need for an election.   See 29

---

[1]  Collectively Plaintiffs Smithfield Foods, Inc. and Smithfield Packaging Company are referred to as "Smithfield" or "Plaintiffs."

U.S.C.A. § 158(a)(3) (2008).[2]  Smithfield alleges that, after several unsuccessful attempts beginning in 1994 to achieve a majority vote of the hourly employees through the NLRB election process, UFCW and Local 400 and the other defendants, conspiring together, devised an unlawful scheme to extort an agreement from Smithfield to recognize UFCW and Local 400 as the exclusive bargaining agents of the hourly employees of the Tar Heel plant.  (Amended Compl. at ¶ 66.)

According to the Complaint, the first manifestation of this strategy was when UFCW publicly announced a so-called "Corporate Campaign" against Smithfield in June 2006.  (Id. at ¶ 38.)  It has been held that a Corporate Campaign includes a "wide and indefinite range of legal and potentially illegal tactics used by unions to exert pressure on an employer...[including] litigation, political

_____

[2] 29 U.S.C.A. § 158(a)(3) provides that "[N]othing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization...to require as a condition of employment membership therein...(i) if such labor organization is the representative of the employees...in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unless following an election held...within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement...."

appeals, requests that regulatory agencies investigate and pursue employer violations of state and federal law, and negative publicity campaigns aimed at reducing the employer's goodwill with employees, investors, or the general public." Food Lion, Inc. v. UFCW, 103 F.3d 1007, 1014 n.9 (D.C. Cir. 1997). The alleged object of the Corporate Campaign was either to force Smithfield to recognize UFCW as the collective bargaining representative of the employees at the Tar Heel plant or to force the plant, if not Smithfield, to become so unprofitable as to necessitate cessation of operations. (Amended Compl. at ¶¶ 38-41.)

While the Complaint details numerous allegations respecting the actions taken by UFCW and Local 400, and the other defendants, against Smithfield, the following outlines the most significant allegations.

    (1) UFCW retained Research Associates of America to prepare and release a false report to the public entitled "Packaged with Abuse: Safety and Health Conditions at Smithfield Packing's Tar Heel Plant." The report was released in August 2006 and was re-released in January 2007. It is further alleged that the defendants intentionally and maliciously caused the false report to be

-4-

published regarding the working conditions in the Tar Heel plant. In addition to charging that Smithfield violated safety laws and regulations, the report accused Smithfield of routinely and illegally denying, or causing to be denied, the workers compensation claims of its injured employees. (Amended Compl. at ¶¶ 88-95.)

(2) The Defendants allegedly interfered with Smithfield's business relationship with Harris Teeter, one of Smithfield's largest customers. Defendants are alleged to have continually and repeatedly attempted to cause Harris Teeter to cease doing business with Smithfield, inter alia, by organizing "Days of Action," which called for demonstrations to take place at Harris Teeter grocery stores across the southeast. The protests allegedly focused on Smithfield's treatment of its workers and accused Smithfield of racial bias with respect to Smithfield's African American and Latino workers. (Id. at ¶¶ 96-116.) All of these charges are alleged to be false.

(3) Smithfield alleges that the Defendants attempted to interfere with Smithfield's business

relationships with numerous other grocery stores nationwide by sponsoring protests in Ann Arbor, Atlanta, Boston, and Nashville. (Id. at ¶¶ 117-124.) The protests are alleged to have been based on falsified grounds.

(4) UFCW allegedly issued a nationwide directive in August 2007 to all of its affiliated local unions regarding the commencement of a "National Boycott" of Smithfield products. Each affiliated local union was directed to contact retailers in its local jurisdiction that carry Smithfield's products and instruct them to discontinue sales of Smithfield's products or face demonstration activity. (Id. at ¶¶ 125-130.) The retailers allegedly were given false information to justify the boycott.

(5) The Defendants allegedly interfered with Smithfield's business relationship with celebrity chef, Paula Deen, who had entered a contractual agreement to promote Smithfield's products on her cooking shows. In an effort to interfere with the business relationship, the Defendants are said to have sponsored, and caused to take place, a series of demonstrations at "Paula Deen Live Tour" events

-6-

and book signings in several cities.  (<u>Id.</u> at
¶¶ 131-140.) These demonstrations too are alleged to
have propounded false information.

(6)   The Defendants allegedly encouraged cities to effect
and publish resolutions condemning Smithfield and
banning the sale of its products within their
municipal jurisdictions.  The Defendants tried to
effect such resolutions in New York City; Cambridge,
Massachusetts; Somerville, Massachusetts; Chelsea,
Massachusetts; and Boston, Massachusetts.  The
Defendants also encouraged members of the Potomac
Association of the Central Atlantic Conference of
the United Church of Christ to effect and publish a
similar resolution condemning Smithfield.  (<u>Id.</u> at
¶¶ 141-154.)  The information provided in pursuit of
these resolutions allegedly was untrue.

(7)   The Defendants allegedly attempted to devalue
Smithfield's stock by mailing letters containing
falsely disparaging information about the company
to financial analysts who follow publicly traded
companies in the food industry.  (<u>Id.</u> at ¶¶ 155-
158.)

(8)   The Defendants also are alleged to have
orchestrated, sponsored, and conducted protests

-7-

against Smithfield which took place at the company's 2006 and 2007 shareholders' meetings. (<u>Id.</u> at ¶¶ 159-167.)

(9)   In or around June 2006, the Defendants issued untrue and misleading press releases in numerous markets as part of the so-called "Justice at Smithfield" campaign.  (<u>Id.</u> at ¶¶ 190-196.)

It was these acts, and others, that allegedly were undertaken for the purpose of causing Smithfield either to recognize the unions without the use of NLRB supervised elections or, alternatively, to cause Smithfield great economic loss, if not financial ruin.  The conduct, says Smithfield, violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962 and certain state laws.

## DISCUSSION

Smithfield has presented a nine count Complaint. Counts One through Four allege RICO claims.  Counts Five through Nine allege various state law claims.  Defendants have moved to dismiss Counts One through Four, as legally deficient, on the principal ground that the conduct alleged therein does not constitute extortion, and, therefore, as a matter of law, those counts allege no racketeering activity.  Alternatively, the Defendants argue that, even

if the Complaint sufficiently alleges racketeering activities and the predicate crime of extortion, Counts One through Four should be dismissed on the ground that the Complaint does not adequately allege a pattern of racketeering activities, which is a necessary element of a RICO violation. The Defendants also seek dismissal of Counts One through Four on the ground that they fail to state claims under 18 U.S.C. § 1962(d) for conspiracy to violate RICO because of the failure to state claims for substantive violations under 18 U.S.C. §§ 1962(a)-(c). The Defendants ask that the state law claims, Counts Five through Nine, be dismissed because the RICO counts are frivolous and thus are so insubstantial that there is no warrant for retaining jurisdiction over the five state law claims.

I.   **The Standard For Assessing A Motion Under Fed. R. Civ. P. 12(b)(6)**

In order to withstand a motion to dismiss under Rule 12(b)(6), it is necessary that a complaint allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1960 (2007). In Bell Atlantic, the Supreme Court reversed the standard, established in Conley v. Gibson "that a complaint should not be dismissed for failure to

state a claim unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." Id. at 1968 citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (emphasis added). Bell Atlantic held that Conley "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."[3] Bell Atlantic, 127 S. Ct. at 1968. The Fourth Circuit has construed Bell Atlantic to mean that, in order to withstand a motion to dismiss, the plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level." Self v. Norfolk Southern, Corp., No. 07-1242, 2008 WL 410284 *1 (4th Cir. Feb. 13, 2008) quoting Bell Atlantic Corp., 127 S. Ct. at 1955. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id.

Of course, Bell Atlantic does not alter the principle that, in deciding a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and the allegations of the

---

[3]    This, of course, is not an entirely clear line of demarcation because the first step in the opportunity to prove what a complaint claims is the survival of the complaint.

-10-

complaint must be taken as true.   Scheuer v. Rhodes, 416
U.S. 232, 236 (1974); Republican Party of North Carolina v.
Martin, 980 F.2d 943, 952 (4th Cir. 1992).   However, "legal
conclusions couched as factual allegations need not be
accepted as true."        Forest Ambulance Serv. v. Mercy
Ambulance, 952 F. Supp. 296, 299 (E.D. Va. 1997).

## II.   The Four RICO Counts In This Action

      The four RICO counts have some separate elements and
they also have one element, or more, in common with the
other  RICO  counts.     Therefore,  while  addressing  the
arguments for dismissal of the RICO claims, it is necessary
to keep in mind the elements of those claims.

      Count One alleges a violation of 18 U.S.C. § 1962(d)
by   conspiring   to   violate   Section 1962(a).   Under
Section 1962(d), "It shall be unlawful for any person to
conspire to violate any of the provisions of subsection
(a), (b), or (c) of this section."  See 18 U.S.C. § 1962(d)
(2006).   To state an offense under 18 U.S.C. § 1962(a), the
Complaint must allege that:   (1) the Defendants derived
income from a pattern of racketeering activity; (2) the
income was used or invested, directly or indirectly, in the
establishment or operation; (3) of an enterprise; (4) which
is engaged in or the activities of which affect interstate

-11-

or foreign commerce.  United States v. Vogt, 910 F.2d 1184, 1193 (4th Cir. 1990).

Count Two alleges a violation of 18 U.S.C. § 1962(d) by conspiring to violate Section 1962(b).  To establish a violation of Section 1962(b), the Complaint must allege that:  (1) the Defendants engaged in a pattern of racketeering activity; (2) in order to acquire or maintain, directly or indirectly; (3) any interest or control over an enterprise; (4) which is engaged in, or the activities of which affect interstate or foreign commerce.  See 18 U.S.C. § 1962(b) (2006); see generally Davis v. Hudgins, 896 F. Supp. 561, 567 (E.D. Va. 1995).

Count Three alleges a violation of 18 U.S.C. § 1962(c).  To make out a violation of Section 1962(c), the Complaint must allege "(1) conduct (2) of [the affairs of] an enterprise (3) through a pattern (4) of racketeering activity."  Davis v. Hudgins, 896 F. Supp. 561, 567 (E.D. Va. 1995) quoting Sedima, S.P.R.L. v. Imrex, 473 U.S. 479, 496 (1985).  Count Four alleges a violation of 18 U.S.C. § 1962(d) by conspiring to violate  Section 1962(c).

Thus, to pass muster as legally sufficient, all four RICO counts must allege, inter alia:  (1) the existence of racketeering activity such that there were predicate acts undertaken by the Defendants; and (2) the existence of a

-12-

pattern of racketeering activity. In the first section of the motion to dismiss Counts One through Four, the Defendants contend that, neither of those two elements are adequately pled and that, therefore, each of Counts One through Four fail as a matter of law. The motion also attacks the sufficiency of each RICO count for different perceived inadequacies.

The opinion will discuss first the arguments which cut across all RICO counts (absence of racketeering activity and absence of pattern). Then, the opinion will consider the alleged inadequacy of each of the four RICO counts on other grounds. Finally, the arguments for dismissal of the state law claims will be addressed.

### III. Whether Counts One Through Four Adequately Allege The Existence Of Racketeering Activities

Under 18 U.S.C. § 1961(a), racketeering activity means "any act or threat involving...extortion...which is chargeable under State law and punishable by imprisonment for more than one year." See 18 U.S.C. § 1961(a) (2006). The Complaint alleges multiple, repeated, and continuous violations of North Carolina and Virginia extortion law. Under North Carolina law, "Any person who threatens or communicates a threat or threats to another with the intention thereby wrongfully to obtain anything of value or

any acquittance, advantage, or immunity is guilty of extortion and such person shall be punished as a Class F felon."  See N.C. GEN. STAT. § 14-118.4 (2007).  Under Virginia law, "Any person who (i) threatens injury to the character, person, or property of another person, (ii) accuses him of any offense . . . and thereby extorts money, property, or pecuniary benefit . . . is guilty of a Class 5 felony."  See VA. CODE ANN. § 18.2-59 (2007).

Defendants move to dismiss the RICO claims presented in each of Counts One through Four on the ground that the conduct alleged in the Complaint is merely coercive activity and not the racketeering activity of extortion. To support this asserted ground for dismissal, the Defendants rely principally on the decision in Scheidler v. National Organization of Women, 537 U.S. 393, 393-94 (2003), wherein the Supreme Court of the United States recognized the distinction between coercion and extortion, holding that the crime of extortion requires obtaining the property of another by depriving the owner of the property.

In Scheidler, the defendants engaged in a pattern of activities aimed at shutting down abortion clinics.  Id. at 393.  The Court held that, while the defendants' actions were coercive because they interfered with, disrupted, and, in some cases, completely deprived the plaintiffs of their

-14-

property rights, namely the right to operate the clinics,
the actions did not rise to the level of extortion because
they did not obtain, nor were they directed toward
obtaining, the property at issue.  Id. at 394.

The Defendants here argue that an employer's right to
recognize a union is an intangible right which, for that
reason, is not property that can be obtained, and that,
therefore, they could not have engaged in extortion  even
if they committed every act charged in the Complaint
(Motion to Dismiss at 6-7.)  Virtually the same contention
was addressed and rejected by the United States Court of
Appeals for the Second Circuit in United States v. Gotti,
459 F.3d 296 (2d Cir. 2006).  In Gotti, the Second Circuit
examined the decision in Scheidler and concluded that,
within the meaning of Scheidler, "LMRDA[4] rights can
constitute extortable property under the Hobbs Act,
notwithstanding the fact that LMRDA rights cannot be
legally exercised by third parties" because intangible
property can qualify as extortable property without
consideration of whether its exercise, transfer, or sale
would be legal.  Id. at 325.  The Second Circuit found that

_____

[4]  LMDRA is the Labor-Management Reporting Disclosure Act,
29 U.S.C. § 401 et seq.  The rights at issue in Gotti were
the  LMDRA  rights  to  free  speech  and  democratic
participation in union affairs and to loyal representation
by union officers.

-15-

the defendants had obtained, and thus extorted, the
following: (i) union members' rights to participate in the
affairs of the union by selecting representatives.  Id. at
325; (ii) an actor's intangible right to decide with whom
he will work.  Id. at 327; and (iii) a business owner's
intangible property rights to make business decisions.  Id.

The statute that provides the framework respecting the
union organization of employees' for purposes of collective
bargaining provides that unions can be recognized by
corporations either by participating in (and winning)
certified NLRB elections or by the employer-company's
voluntary recognition of the union based upon a
contemporaneous showing of majority support by the
employees.  The right to recognize a union (or not),
especially when employees have rejected the union's
organizing efforts, is a matter of considerable import and
the exercise of that right carries with it significant
consequences, fiscal and operational, for the employer and
its employees.  The right is intangible.  But, of course,
businesses have a host of intangible rights, the exercise
of which are critical to the viability of the business,
and, without doubt, those rights are the property of the
proprietor -- the business owner.   For example, business
owners have, among others, the right to invest (or not) in

-16-

new equipment, to open or close manufacturing facilities, to hire and fire employees, to vote the shares that the company owns, and to provide (or not) pay raises, bonuses or other financial incentives to employees.

In reality, the right to recognize (or not) a union as bargaining representative is among the most valuable and important of rights possessed by business owners. The very existence of the Corporate Campaign concept is founded on the recognition that the exercise of that right is of great import and of great consequence. Like the host of other rights mentioned above, the right of voluntary recognition cannot, standing alone, be bought or sold or exercised by a third party. That certainly does not mean either that the right is not valuable or that it is any less of a property right than the other rights that compromise the essence of business ownership.

Contrary to the position of the Defendants, Scheidler did not remove extortion of intangible property rights from the reach of RICO. Before Scheidler, the Second Circuit confronted that question in United States v. Tropiano, 418 F.2d 1069, 1075-76 (2d Cir. 1969), wherein the court held that property, within the meaning of the Hobbs Act and hence RICO, included "in a broad sense, any valuable right considered as a source or element of wealth and does not

-17-

depend upon a direct benefit being conferred on the person who obtains the property." Id. In Tropiano, the property right at issue was the right to solicit customers as an integral component of the intangible right to do business. In United States v. Bellono, 176 F.3d 590, 592-93 (1999), the Second Circuit found that the intangible right to participate in a union election was extortable property within the meaning of RICO. In United States v. Santoni, 585 F.2d 667, 673 (4th Cir. 1978), the Fourth Circuit, citing Tropiano, held that, under the Hobbs Act and RICO, property included the "right of [a corporation] to make a business decision free from outside pressure wrongfully imposed. . . ."

In Gotti, the Second Circuit, in a thoughtful and thorough opinion, rejected the argument that, as a matter of law, Scheidler, in practical effect, had nullified Tropiano or overruled it sub silento. For the reasons explained by the Second Circuit in Gotti, it is quite clear that Scheidler did not vitiate either Tropiano or Santonio or any other decision[5] which held that intangible rights of

---

[5] See, Food Lion, Inc. v. United Food and Commercial Workers, No. 2:96-cv-0687 (D.S.C. Sept. 10, 2003); Titan Intl v. Becker, 189 F. Supp.2d 817, 826 (C.D. Ill. 2001); A. Terzi Production, Inc. v. Theatrical Protective Union, 2 F. Supp.2d 485 (S.D.N.Y. 1998); Bayou Steel Corp. v. United Steelworkers of America, No. Civ. A-95-496-RRM, 1996 WL

-18-

a business were property that was susceptible of extortion. The same reasoning which animated the Second Circuit's decision in _Gotti_ disposes of the Defendants' like contention here, and, for those reasons, the Defendants' argument is rejected here.[6]

Until the Unions prevail in a valid NLRB certified election at the Tar Heel plant, Smithfield has the property right not to recognize UFCW and Local 400 and, on the issue of union recognition, to operate its business free from interference by, or the involvement of, the Defendants. According to the Complaint, UFCW and Local 400 have sought to obtain from Smithfield the property right of recognizing, or refraining from recognizing, the Unions as bargaining representative of the Tar Heel employees. Those efforts are no less an effort to obtain a property right than were the efforts of the defendants in _Gotti_ to obtain the "intangible property rights to make various business

---

76344 (D. Del. Jan. 11, 1996); _Domestic Linen Supply & Laundry Co. v. Central States & Srv. Areas Pension Funds_, 722 F. Supp. 1472 (E.D. Mich. 1989).

[6] In their reply brief, the Defendants assert that the decision in _Overnite Trans. Co. v. Int'l Brotherhood of Teamsters_, 168 F. Supp.2d 826 (N.D. Tenn. 2001) requires a different result. _Overnite_ is a far different case with significantly different issues, and it does not affect the result reached here.

decisions...free from outside pressure.   <u>United States v.</u>
<u>Gotti</u>, 459 F.3d at 327.

Those attempts are alleged to have been pursued by
extortion that involved, <u>inter alia</u>, unlawfully interfering
with Smithfield's business and its relationships with third
parties, unlawfully attempting to inflict financial and
reputational losses, and engaging in a wide variety of
other allegedly unlawful conduct.   It also is alleged that
the Unions threatened Smithfield with more of the same,
even financial ruin, if Smithfield did not forego its
property right not to recognize the Unions.

By any reasonable interpretation of applicable state
or federal law, the Complaint presents facts that plausibly
posit the existence of extortion and thus racketeering
activity.   Because the Complaint adequately alleges that
the Defendants are attempting to extort from Smithfield,
its right to conduct its business as it is so advised and
its right to refrain from recognizing unions, the Complaint
adequately alleges that the Defendants have committed
predicate acts of extortion.

**IV.   Whether Counts One Through Four Adequately Allege A
Pattern Of Racketeering Activities**

Counts One through Four allege that Defendants engaged
in a pattern of racketeering activity.   The existence of a

-20-

pattern of prohibited activity is an element of each of those four RICO counts because, under 18 U.S.C. § 1962(a), "[i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity...to use or invest, directly or indirectly, any part of such income, or the proceeds of such income...." See 18 U.S.C. § 1962(a) (2006). A pattern of racketeering activity requires "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years...after the commission of a prior act of racketeering activity." See 18 U.S.C. § 1961(5) (2006). The Supreme Court addressed and clarified the pattern requirement in H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989) which controls the analysis here.

In H.J., Inc., customers of Northwestern Bell Telephone Company filed a class action against the telephone company alleging that it had attempted to influence members of the Minnesota Public Utilities Commission (MPUC) and thereby caused them to approve rates for the telephone company exceeding fair and reasonable amounts by making cash payments to commissioners, negotiating with them regarding future employment, and

-21-

purchasing airline and event tickets for the commissioners. Id. at 232. The plaintiffs alleged violations of RICO, given that the predicate acts involved violations of the bribery statute under Minnesota state law. Id. The district court granted the defendant's motion to dismiss under Rule 12(b)(6) on the ground that each fraudulent act was committed in furtherance of a single scheme to influence the MPUC to the detriment of Northwestern Bell's customers; thus, there was no pattern of racketeering activity. Id. at 234. The decision was affirmed by the Court of Appeals. Id. at 235.

The Supreme Court reversed, holding that, in order to assess whether there is a pattern of racketeering activity, it was necessary to analyze: (1) the relationship of the criminal acts and (2) the continuity of the acts. The relationship requirement is satisfied when "criminal acts...have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 240. The continuity requirement refers to "a closed period of repeated conduct, or to past conduct that by its nature projects into the future a threat of repetition." Id. at 241; See Walk v. The Baltimore and Ohio Railroad, 890 F.2d

688, 690 (4th Cir. 1989) (racketeering activity that continued over a ten year period met the requirements of continuity necessary to prove a pattern of racketeering activity, notwithstanding the fact that the conduct was "closed-ended."). A continuing racketeering activity may be demonstrated even without proof of multiple racketeering schemes. H.J., Inc., 492 U.S. at 240. The Supreme Court reversed the dismissal of H.J., Inc. because the plaintiffs had shown the ability to prove multiple predicate acts of bribery which satisfied the requirements of relatedness and continuity. Id. at 250.

In this case, Smithfield has sufficiently alleged that the predicate acts of extortion committed by the Defendants were related. The alleged predicate acts had the same or similar purpose. The acts were participated in generally by the same people. The alleged victim was the same. The alleged method of commission was the same or similar. The acts, as alleged, were not isolated events. The allegations of the Complaint, if proved, meet the requirement for relatedness specified in H.J., Inc.

The Complaint also alleges facts sufficient to meet the continuity requirement. The alleged conduct has continued for over 18 months. It also is alleged that the Defendants' conduct continued after the filing of the

-23-

Complaint when the Defendants allegedly caused Smithfield
to lose a critical marketing opportunity on the <u>Oprah
Winfrey</u> show.  (Opposition at 12, n. 6.)  Indeed, at oral
argument, Smithfield represented, without refutation by the
Defendants, that conduct of the sort alleged in the
Complaint continues even now.

The principal authority on which the Defendants rely
for their absence of pattern position is <u>DTEX, LLC v. BBVA
Bancomer, S.A.</u>, 405 F. Supp.2d 639 (D.S.C. 2005), aff'd 214
Fed. Appx. 286, 2007 WL173711 Jan. 17, 2007) (unpublished
opinion).[7]  In <u>DTEX</u>, it was alleged that the defendant
committed numerous criminal and corrupt practices to
preclude the plaintiff from obtaining possession of
equipment in which the plaintiff had a security interest.

The district court, in <u>DTEX</u>, first concluded that the
complaint had not alleged but one predicate act, and that,
therefore, there could be no pattern.  That ground for
rejecting the absence of a pattern in the pleading simply
does not exist here.  Instead, the Complaint in this case
alleges many, related acts of extortion.

---

[7] Unpublished opinions are neither binding nor of
precedential effect.  They, of course, can be useful
analytical tools.  Here, the Court of Appeals adopted the
reasoning of the district court so that reasoning will be
addressed.

-24-

Then, in dicta, the DTEX opinion observed that the complaint failed to satisfy the continuity component of the pattern requirement because "the alleged scheme is narrowly focused on one goal and will end when and if that goal is accomplished." DTEX, LLC v. BBVA Bancomer, S.A., 405 F. Supp.2d at 650. In support of that statement, the DTEX opinion cited decisions in which there was no threat of long-term extortionate activity[8] and in which the scheme was narrowly focused,[9] and concluded that, because the complaint in DTEX fit those parameters, the continuity requirement was not met.

An examination of the Complaint here discloses that it alleges many different, albeit related, kinds of threats and acts. The conduct seeks to accomplish different, albeit related, objectives. The Complaint alleges that the wide-ranging extortionate conduct had lasted for more than 18 months before the action was filed and was continuing as of the eve of the filing of the action. The unrefuted allegation is that, even during the pretrial proceedings herein, the conduct has continued. Thus, considering this

---

[8] See e.g., G.E. Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 549 (4th Cir. 2001); Toucheque v. Price Bros., 5 F. Supp.2d 341 (D. Md. 1998).

[9] Al-Abood v. El-Shamari, 217 F.3d 225, 248 (4th Cir. 2000); Menasco, Inc. v. Wasseronan, 886 F.2d 681, 684 (4th Cir. 1989).

-25-

Complaint and the relatedness and continuity requirements that frame the pattern assessment, this case is quite different than DTEX.

For the foregoing reasons, the assertions that Counts One through Four are deficient for failure adequately to allege the presence of a pattern of racketeering activity are without merit.

## V.    Whether Count One Is Otherwise Deficient

Defendants have moved to dismiss Count One also on the grounds that it does not allege that: (1) UFCW or Local 400 received any income from a pattern of racketeering activity; or (2) there has been use or investment of any such income or the proceeds from such income.    (Motion to Dismiss at 20.)

Count One is based on 18 U.S.C. § 1962(d) and charges that Defendants conspired to violate 18 U.S.C. § 1962(a) which states that:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity...to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise....

See 18 U.S.C. § 1962(a) (2006) (emphasis added). Under 18 U.S.C. § 1962(d), it is unlawful to conspire to violate any

provisions of § 1962(a). See 18 U.S.C. § 1962(d) (2006).

Defendants assert that Count One fails adequately to allege that the Defendants agreed to receive use, or invest income derived from, a pattern of racketeering activity. The text of Count One alleges that "Defendants conspired among themselves that income would be received, directly or indirectly, from a pattern of activity unlawful under 28 U.S.C. §1961(1)(A)." (Compl. ¶ 247).

Smithfield's opposition to this aspect of the motion to dismiss is based largely on Titan International, Inc. v. Becker, 189 F. Supp. 2d 817, 828 (C.D. Ill. 2001), in which the court held that there was a sufficient allegation of conspiracy to violate Section 1962(a) where "the primary reason for the Defendants' alleged extortionate activities was to invest money in the Steelworkers Pension Enterprise." If a complaint does present a sufficient substantive allegation under Sections 1962(a) or (b), it need not allege that an injury occurred as a result of the use or investment of income from racketeering activities. Titan, 189 F. Supp. 2d at 829.

Smithfield argues that the conclusory assertion that the funds are to be received from union dues to be paid by employees upon recognition of the Unions will result in contribution to pension plans and increased salaries to the

-27-

individual defendants is sufficient allegation of a conspiracy to violate Section 1962(a). (Compl. ¶¶ 83-84). However, Smithfield has not alleged that there were agreements between the Defendants that the funds would be used thusly. Hence, as presented in the Complaint, Count One is inadequate.

However, in reply briefs and at oral argument, Smithfield demonstrated that it could cure this defect by amendment. Therefore, Count One of the Complaint was dismissed with leave to amend. Smithfield timely filed an Amended Complaint to address the defect identified by the Defendants.

Where, as in Titan and as in the Amended Complaint in this case, it is alleged that the Defendants have violated Section 1962(d) by conspiring to violate Section 1962(a), the claim is legally sufficient if it alleges the presence of an agreement to use or invest the income derived from the racketeering activity, even if there is no alleged actual use or investment. Id. In the Amended Complaint, Smithfield alleges inter alia:

> An object of the said conspiracy was and
> is that income, or the proceeds of income,
> received by defendants UFCW and UFCW
> Local 400 be used or invested in the
> operation of the said enterprises for
> numerous legitimate and illegitimate
> purposes including, inter alia, the

-28-

> conduct of additional extortionate
> corporate campaigns, payment of salaries
> and fees to the other defendants for the
> purpose of engaging in further corporate
> campaigns and otherwise and the ongoing
> operation of the UFCW and UFCW [L]ocal 400
> enterprises. (Amended Compl. at ¶ 248.)

That is legally sufficient.

## VI. Whether Count Two Is Otherwise Deficient

Defendants move to dismiss Count Two also on the ground that Smithfield has not adequately alleged a conspiracy to violate Section 1962(b) because, even if the Defendants were successful in extorting 'voluntary' recognition of UFCW and Local 400 as the exclusive bargaining representatives of the employees at the Tar Heel plant, the Defendants would not gain an interest in, or control of, Smithfield itself. (Motion to Dismiss at 21.) The statute at issue, Section 1962(b) provides:

> It shall be unlawful for any person
> through a pattern of racketeering
> activity...to acquire or maintain,
> directly or indirectly, any interest in
> or control of any enterprise which is
> engaged in, or the activities of which
> affect, interstate or foreign commerce.

See 18 U.S.C. § 1962(b) (2006).

Under the reasoning of Titan, Smithfield has sufficiently alleged that the Defendants conspired to violate Section 1962(b). In Titan, the court held that:

>           To properly state a claim for a
>           conspiracy to violate § 1962(b),
>           Plaintiffs' allegations of Defendants'
>           agreement to control or participate in
>           the enterprise need not rise to the level
>           of formal control....To allege control,
>           Plaintiffs must allege that Defendants
>           agreed to manipulate Plaintiffs'
>           activities through predicate acts which
>           would cause Plaintiffs to make decisions
>           it would not have otherwise made.

Titan, 189 F. Supp. 2d at 829.  The court, in Titan, held

that the plaintiffs adequately stated a claim for a

conspiracy to violate Section 1962(b) by alleging that the

defendants, including United Steelworkers of America

("USWA") and USWA Locals 164 and 303, engaged in acts of

extortion, such as bomb threats, physical violence,

property damage, the filing of frivolous workers'

compensation claims, and unlawful interference with Titan's

business relations, in an attempt to manipulate the

plaintiffs' hiring and wage decisions.  Id. at 821; 829;

see generally Marceau v. Int'l Bd. of Elec. Workers Local

1269, No. 05-02874-PHX-MHM, 2006 WL 1889600 *7 (D. Ariz.

July 7, 2006) ("control under § 1962(b) is best determined

by the circumstances of each case and does not require

formal control such as holding of majority stock or actual

designation as an officer or director.") (quoting Ikuno v.

Yip, 912 F.2d 306, 310 (9th Cir. 1990)).

         On the facts alleged in the Complaint, if the

-30-

Defendants are able to extort voluntary recognition of the
union, they will gain "substantial autonomy and control
over [Smithfield's] business operations" and "considerable
strategic and financial leverage when negotiating on behalf
of other units of Smithfield employees currently
represented by other local unions of Defendant UFCW."
(Amended Compl. at ¶¶ 80-82.) Defendants are allegedly
attempting to achieve these objectives, inter alia, by
interfering with Smithfield's business relationships with
third parties and damaging Smithfield's relations with its
shareholders and in the institutional investment community,
thereby inflicting significant financial losses on
Smithfield in unlawful ways. These allegations state a
claim for a conspiracy to violate Section 1962(b).
Accordingly, that additional theory of dismissal is
rejected, and the motion to dismiss Count Two for that
reason will be denied.

## VII. Whether Counts Three and Four Are Otherwise Deficient

Defendants seek dismissal of Counts Three and Four on
the independent ground that the three entity defendants
(Research Associates of America, Jobs with Justice, and
Change to Win) and the individual defendants (Leila
McDowell, Andrew Stern, and Tom Woodruff) did not conduct

-31-

or participate in the conduct of the enterprises UFCW and Local 400. (Motion to Dismiss at 23-28.) The statute at issue in this part of the motion is 18 U.S.C. § 1962(c) which provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in...interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

See 18 U.S.C. § 1962(c) (2006). Section 1962(d) makes it unlawful for any person to conspire to violate Section 1962(c).

The allegations made, inter alia, with respect to the three entity defendants are as follows:

> (1) Research Associates of America authored the factual report entitled "Packaged with Abuse: Safety and Health Conditions at Smithfield Packing's Tar Heel Plant." The report was released in August 2006 and was re-released in January 2007. The report has "become the lynchpin" of the Corporate Campaign against Smithfield. (Amended Compl. at ¶ 95.)
>
> (2) Jobs with Justice has through its agents led, orchestrated, or sponsored numerous protests.

-32-

(Id. at ¶¶ 108; 118-19; 123-24; 159.)   It has
also met with various city councils to promote
resolutions condemning Smithfield and has drafted
such resolutions.   (Id. at ¶¶ 141-42; 145-47;
149; 151.)

(3)   Change to Win commissioned the drafting of the
report by Research Associates of America.   (Id.
at ¶¶ 88-89.)   The entity was also involved in
protesting     Smithfield     Foods'     shareholder
meetings.  (Id. at ¶ 159.)

The allegations stated, inter alia, with respect
to the three individual defendants are as follows:

(1)   Lelia McDowell is a spokeswoman for UFCW and the
Communications Coordinator for the "Justice at
Smithfield" Campaign.  (Id. at ¶ 18.)

(2)   Andrew Stern is a member of Change to Win's
Leadership Council, which authorized the adoption
of the Corporate Campaign as an official Change
to Win Campaign.  (Id. at ¶¶ 20, 67.)

(3)   Tom Woodruff directs the Strategic Organizing
Center of Change to Win.  (Id. at ¶¶ 21, 69.)

In Reves v. Ernst & Young, 507 U.S. 170, 178-79
(1993), the Supreme Court held that, in order to "conduct
or participate" in an enterprise's affairs through a

-33-

pattern of racketeering activity, it is necessary to have some part in directing the affairs of the enterprise. In <u>Reves</u>, the Supreme Court held that outside auditor, Arthur Young, did not participate in the operation or management of the enterprise by creating the enterprise's financial statements, notwithstanding that the financial statements were the responsibility of the enterprise's management. <u>Id.</u> at 186. The Court made clear that it is necessary to distinguish between an individual or entity "acting in an advisory professional capacity (even if in a knowingly fraudulent way) and [one] acting as a direct participant in corporate affairs." <u>In re American Honda Motor Co. Inc. Dealerships Relations Litigation</u>, 941 F. Supp. 528, 560 (D. Md. 1996).

The Complaint in this action alleges that the entity and individual defendants listed above were not merely retained as professional advisors to UFCW and Local 400. Instead, it is alleged that the entity and individual defendants were participating in, and conducting, the Corporate Campaign, <u>inter</u> <u>alia</u>, by investigating Smithfield's operations and drafting factual reports regarding workplace safety violations, organizing protests at the sites of Smithfield's business partners and shareholder meetings, and proposing resolutions to city

-34-

councils and other organizations. Thus, according to the Complaint, the entity and individual defendants were significant, active, independent participants in the alleged conspiracy, rather than advisors to UFCW and Local 400. The individual defendants likewise are alleged to have been active, significant, independent participants in the misconduct therein alleged. Accordingly, the motion to dismiss Count Three will be denied.

Smithfield also has sufficiently stated a claim in Count Four for a conspiracy to violate Section 1962(c). To state a claim for conspiracy to violate Section 1962(c), it is not necessary for every defendant to personally qualify as an operator or manager of the RICO enterprise. See Brouwer v. Raffensperfer, Hughes & Co., 199 F.3d 961, 967 (7th Cir. 2000). Rather, each defendant "must knowingly agree to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner." Id. Thus, when a claim involves a conspiracy to violate Section 1962(c), it is only necessary to show an agreement to perform services to facilitate illegal activities, rather than showing the actual involvement of each individual or entity in each such activities. In this case, Smithfield has sufficiently stated a claim because each of the entity and individual

Defendants allegedly were either personally involved in the
operation or management of UFCW and Local 400's Corporate
Campaign or were, at least, alleged to be knowingly
performing services to facilitate the activities of those
involved in the Corporate Campaign.   Consequently, the
motion to dismiss Count Four on that ground will be denied.

## VIII.    State Law Claims

Defendants have moved for the dismissal of the state
law claims, Counts Five through Nine, on the ground that
Smithfield's RICO claims are "so insubstantial and so
contrived as to warrant the dismissal of Smithfield's
pendent state law claims for lack of subject matter
jurisdiction."  (Motion to Dismiss at 28.)  Alternatively,
the defendants argue that, under the reasoning of United
Mine Workers of America v. Gibbs, "if the federal claims
are dismissed before trial, even though not insubstantial
in a jurisdictional sense the [pendent] state law claims
should be dismissed as well." 383 U.S. 715, 726 (1966).

The doctrine of insubstantiality allows for the
dismissal of claims only when they are frivolous.   See
Davis v. Pak, 856 F.2d 648, 651 (4th Cir. 1988) ("Cases
which are doubtful on the merits, even those which cannot
survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for

-36-

failure to state a claim, still are substantial enough to support federal jurisdiction." (internal citations omitted)) If a complaint presents both federal and state law claims, the doctrine of insubstantiality is applicable "where a wholly frivolous federal claim serves as a pretext to allow a state law issue, the real focus of the claim, to be litigated in the federal system." Id.

Given that Smithfield has stated legally sufficient claims for relief under 18 U.S.C § 1962, it certainly cannot be held that the federal claims are frivolous. Further, it does not appear (and the defendants have not argued) that the plaintiffs have brought RICO claims as a pretext to allow for the litigation of the state law claims in this Court.[10] Accordingly, because there are no grounds to dismiss Counts Five through Nine of the Complaint, the motion to dismiss those counts will be denied.

### CONCLUSION

For the foregoing reasons and the reasons set forth on the record on January 29, 2008, the DEFENDANTS' JOINT MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (Docket No. 25) will be denied as to

---

[10]   Because the federal counts remain, the principles of United Mine Workers of America v. Gibbs and supplemental jurisdiction under 28 U.S.C. § 1367 have no application here.

Counts Two through Nine and granted as to Count One with leave to file an Amended Complaint as to Count One (which Smithfield now has done).

It is so ORDERED.

_____/s/_____ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May 29, 2008