

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SMITHFIELD FOODS, INC.
and SMITHFIELD PACKAGING
COMPANY,

    Plaintiffs,

v.　　　　　　　　　　　　　　　Civil Action No. 3:07cv641

UNITED FOOD AND COMMERCIAL
WORKERS INTERNATIONAL UNION,
et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the Defendants' Motion in Limine to exclude evidence pursuant to Federal Rules of Evidence 401, 402, and 403 (Docket No. 111) filed by Defendants United Food and Commercial Workers International Union ("UFCW"), United Food and Commercial Workers Local No. 400, Change to Win, Research Associates of America, Jobs with Justice, Gene Bruskin, Joseph Hansen, William T. McDonough, Leila McDowell, Patrick J. O'Neill, Andrew L. Stern, and Tom Woodruff (collectively "Defendants"). Specifically, part of the *motion in limine*, here at issue seeks to exclude evidence of "other corporate campaigns" conducted by the Defendants. For the reasons set forth below, the motion will be denied.

**BACKGROUND**

Smithfield Foods, Inc. is a Virginia corporation with its principal place of business in Smithfield, Virginia. Amended Compl. at ¶ 8. Smithfield Packaging Company is a wholly-owned subsidiary of Smithfield Foods. Id. at ¶ 9. Smithfield's largest asset is its pork processing plant in Tar Heel, North Carolina. Id. The Tar Heel plant is the world's largest pork processing plant and employs approximately 4,650 hourly employees. According to the Amended Complaint, the UFCW has been unsuccessfully trying for well over a decade to become the bargaining representative for the employees of the Tar Heel plant. Id.

The National Labor Relations Act ("NLRA") 29 U.S.C. § 158(a)(3) permits a union to become a collective bargaining representative for an employer's employees if the union prevails in an election certified by the National Labor Relations Board ("NLRB"). The NLRA also permits an employer, under certain circumstances, to voluntarily recognize a union. See 29 U.S.C.A. § 158(a)(3) (2008).

According to the Amended Complaint, the UFCW publicly announced a "corporate campaign" against Smithfield in June 2006. Corporate campaigns include a "wide and indefinite range of legal and potentially illegal tactics used by

2

unions to exert pressure on an employer . . . [including] litigation, political appeals, requests that regulatory agencies investigate and pursue employer violations of state and federal law, and negative publicity campaigns aimed at reducing the employer's goodwill with employees, investors, or the general public." Food Lion, Inc. v. UFCW, 103 F.3d 1007, 1014 n.9 (D.C. Cir. 1997). The alleged object of the Defendants' campaign against Smithfield was to force Smithfield to recognize the UFCW as the collective bargaining representative of the employees at the Tar Heel plant and agree to a first contract or to force Smithfield to become so unprofitable as to necessitate cessation of business operations. Amended Compl. at ¶¶ 38-41).

Smithfield has presented a nine-count Amended Complaint. Counts One through Four allege RICO claims, with violations of state extortion law forming the RICO predicate offense. Counts Five through Nine allege various state law claims. On September 16, 2008, the Court heard oral argument and subsequently ruled on a number of pending motions in limine, but reserved judgment on the portion of the Defendants' Motion in Limine which sought to exclude evidence of "other corporate campaigns" conducted by the Defendants (i.e., corporate campaigns conducted by the

3

Defendants against other employers). Judgment was reserved until the deposition of Michael Proulx ("Proulx") was taken. At his deposition, Proulx, the CEO of Bashas', a family owned chain of over 150 grocery stores located in Arizona, testified about Bashas' experience with a UFCW-led campaign against it.

Proulx testified that the UFCW announced a corporate campaign against Bashas' in the spring of 2006. During the Bashas' Campaign, the UFCW conducted a number of demonstrations at numerous Bashas' stores, issued a number of damaging statements about Bashas', engaged various community activists to attack Bashas', and funded a company called "Hungry for Respect." Pltfs' Opp. at 2. All of this was allegedly done with the intent to inflict severe financial damage on Bashas' and to embarrass the Bashas' organization. Id.

Proulx detailed a number of conversations that he had with William McDonough ("McDonough"), the UFCW's Executive Vice President, wherein McDonough told Proulx that the objective of the Bashas' campaign was to force Bashas' to forego its rights under the NLRA and for the UFCW to obtain a union contract outside of the NLRB process. Id. at 2, 3. McDonough told Proulx that, if Bashas' did not agree to this demand the UFCW would financially "destroy" Bashas',

just as the UFCW had apparently destroyed certain other competitor grocery chains in the Southwest. Id. at 3. Proulx also testified that McDonough asked Bashas' to partner with the UFCW so that they could "go after destroying Wal-Mart and Whole Foods" together. Id.

## DISCUSSION

Evidence that is not relevant is never admissible. Fed. R. Evid. 402. "Relevant" evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Once evidence has been shown to meet the threshold of relevance it is presumptively admissible unless the Constitution, a statute, rule of evidence or procedure, or case law requires that it be excluded." Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 541 (D. Md. 2007).

Nevertheless, Fed. R. Evid. 403 provides that evidence which is otherwise admissible may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." As such, Rule 403 requires weighing the need for the admission of relevant evidence against the potential harm of admitting the evidence. Id. When the harmful component of relevant evidence becomes

unduly prejudicial, a court should exclude it from consideration by the jury. In this circuit, "undue prejudice" is defined as "a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." United States v. Ham, 998 F.2d 1247, 1252 (4th Cir. 1993) (citation omitted).

### I. The Relevance Of Proulx's Testimony

The Defendants seek to exclude evidence of "other corporate campaigns." Def's Mot. at 4. The Defendants assert that the "other" corporate campaign activity which is detailed in the Amended Complaint[1] "at most suggest[s] that UFCW was attempting to place economic pressure on [other] employers through various publicity and petitioning activities," but does not demonstrate that any of this "other activity" was extortionate.[2] Def's Mot. at 5.

---

[1] In the Amended Complaint, Smithfield identified a number of other corporate campaigns conducted by the Defendants. See ¶¶ 51-54 (Bashas'), ¶¶ 62-63 (Wal-Mart), ¶¶ 55-61 (Tesco, Food Lion, Farmer Joe's). Now, however, Smithfield evidently appears to be focusing only on the corporate campaign at Bashas' to make their argument. Accordingly, the scope of this *motion in limine* has been narrowed to address only the proffered evidence of the UFCW's corporate campaign against Bashas'.

[2] The Defendants vehemently contend that, where the Defendants are only accused of employing "fear of economic loss" to obtain "obtain legitimate economic ends," their conduct cannot constitute extortion. Because the Court

Therefore, the Defendants contend that the existence of these other corporate campaigns is irrelevant. Id.

Smithfield claims that Proulx's testimony is probative of two key issues in this case: (1) it provides an alternative method of establishing a "pattern of racketeering activity," as required under the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (2) it is evidence of the Defendants' extortionate motive in carrying out the Smithfield Campaign. On these two issues, Smithfield is correct.

### A. The Testimony's Relevance In Establishing A Pattern Of Racketeering Activity

In this case, Smithfield has the burden of proving that the Defendants engaged in a "pattern of racketeering activity." 18 U.S.C. § 1961(5) (2008). This requires that Smithfield prove that the Defendants committed "two or more" racketeering acts within a ten-year period. Id. This pattern requirement is designed to prevent RICO's harsh sanctions, such as treble damages, from being applied to "garden-variety fraud schemes." Menasco, Inc. v.

---

already has concluded, in its opinion on the Consolidated Motion for Summary Judgment of all Defendants, that such activity can constitute extortion under both Virginia and North Carolina law, this argument cannot serve as a basis to exclude the evidence at issue. Accordingly, the UFCW's corporate campaign against Bashas' is relevant to the claims of extortion asserted in the present case.

7

Wasserman, 886 F.2d 681, 683 (4th Cir. 1989) ("The pattern requirement in § 1961(5) thus acts to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions.").

To establish a pattern of racketeering activity, "a plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989). Hence, the pattern requirement has been reduced to a "continuity plus relationship" test. See id. As the Fourth Circuit has observed, however, there is no mechanical formula to assess whether the pattern requirement has been satisfied; it is a commonsensical, fact-specific inquiry. Id. at 237-38, 242; Anderson v. Found. for Advancement, Educ., and Employment of Am. Indians, 155 F.3d 500, 506 (4th Cir. 1998) ("These criteria are not always easily applied and depend on the facts of each particular case.").

As previously held in the opinion denying the Defendants' motion to dismiss, the facts alleged in this case are different from those cases where no threat of "long-term extortionate activity" was present. Mem. Op. at 25. Importantly, courts have held that this type of extortionate activity *does* create an ongoing relationship,

8

and thereby satisfies RICO's "pattern" requirement. <u>A. Terzi Prods. v. Theatrical Protective Union, Local No. One</u>, 2 F. Supp. 2d 485, 507 (S.D.N.Y. 1998) ("[T]his Court rejects defendants' argument that a threat of continuity did not exist because the alleged unlawful activity terminated when [the plaintiff] signed the [union] Agreement."); <u>see also</u> <u>Barticheck v. Fidelity Union Bank/First Nat'l State</u>, 832 F.2d 36, 39 (3d Cir. 1987) (remedial purposes of RICO would be disserved if the continuity requirement "allowed a party to maintain a RICO claim if he brought suit before the unlawful scheme had obtained its objective," but prohibited the claim where the "scheme had fully accomplished its goal"). Despite the prior resolution of this issue in their favor, however, Smithfield argues that the existence of other corporate campaigns "provide[s] proof of a second predicate act" which "would [also] allow a jury to rule that Defendants have engaged in two or more acts of racketeering required to prove a RICO pattern." Pltfs' Opp. at 6 n.4.

Smithfield is entitled to make this alternative evidentiary showing on the "pattern" element of RICO. <u>See</u> <u>United States v. Douglas</u>, 482 F.3d 591, 597 (D.C. Cir. 2007) ("evidentiary relevance under Fed. R. Evid. 401 is not affected by the availability of alternative proofs of

9

the element"). Moreover, Smithfield is correct that evidence of "other" allegedly extortionate campaigns carried out by the Defendants against non-parties can establish a pattern of racketeering activity *in the present case*. See Eplus Tech., Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002) (where the defendant "was involved in other credit scams," the court need not decide whether the scheme before the court "standing alone, would sufficiently establish a pattern of racketeering activity"). Therefore, evidence of the Defendants' allegedly extortionate campaign against Bashas' is relevant and admissible for the purpose of demonstrating that the Defendants engaged in a pattern of racketeering activity under RICO.

### B. The Testimony's Relevance In Proving The Defendants' Motive

Smithfield also contends that "Proulx's testimony is probative of what the Defendants were trying to accomplish with their corporate campaign. Smithfield is entitled to put before the jury evidence probative of Defendants' motive." Pltfs' Opp. at 6, 7.

Under Fed. R. Evid. 404(b), evidence of other acts may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." As all of the parties to this action

have agreed, the Defendants' "motive" in conducting the Smithfield Campaign is a critical issue in this case. See also United States v. Sassano, 2008 U.S. App. LEXIS 20015, at *3 (2d Cir. Sept. 19, 2008)("previous instances of extortion . . . were relevant and important to prove motive").

It is well established that, where evidence of prior bad acts is admitted for the purpose of showing intent, "the prior acts need not duplicate exactly the instant charge, but need only be sufficiently analogous to support an inference of [intent]." United States v. Benton, 852 F.2d 1456, 1468 (6th Cir. 1988) (citing United States v. Burkett, 821 F.2d 1306, 1309 (8th Cir. 1987)). With this in mind, it is clear that testimony about the UFCW's corporate campaign against Bashas' is admissible to prove the motive of the Defendants in the present case. Significantly, the Defendants employed tactics against Bashas' which are nearly identical to the tactics alleged to have occurred during the Smithfield Campaign (e.g., conducting demonstrations, issuing damaging statements, enlisting community activists, threatening to financially destroy the company, creating a front organization to fund and promulgate their message). Therefore, evidence of the Defendants' stated intent in conducting similar campaigns

11

is highly probative of whether the Defendants were truly seeking a "free and fair" election process through the Smithfield Campaign, or whether, as Smithfield contends, the Defendants sought to extort from Smithfield recognition as collected bargaining representation and a first contract. See Benton, 852 F.2d at 1468 ("previous instances of extortion relating to protection of bootlegging were relevant and important to . . . the charges of extortion relating to protection of cocaine dealers in the indictment").

C.  **Fed. R. Evid. 403 Considerations**

The Defendants argue that, "even if there were any potential relevance to evidence of the UFCW's other campaigns, the slim value of such evidence is far outweighed by the inordinate amount of time and resources that would be devoted to such an ancillary matter, and would likely distract and confuse the jury as to the important elements of proof. As such, it would be subject to exclusion under Fed. R. Evid. 403." Defs' Mot. at 7.

12

Under Fed. R. Evid. 403, relevant evidence may be excluded only if its probative value is substantially outweighed by the danger of unfair prejudice. It is uncontroversed that, when considering a Rule 403 objection to the admission of evidence, "the balance under Rule 403 should be struck in favor of admissibility." United States v. Aramony, 88 F.3d 1369, 1378 (4th Cir. 1996). Significantly, the Defendants have conceded that they have engaged in numerous "other corporate campaigns," including the Bashas' Campaign. See also Pltfs' Opp. at 6 n.6. Thus, the Defendants' concern over the "inordinate amount of time" that the introduction of such evidence will engender is largely misguided because the majority of the conduct at issue is undisputed. See Defs' Mot. at 12.

Additionally, the Defendants' concern over the tendency of such "ancillary" evidence to confuse the jury is substantially outweighed by the obvious probative value of such evidence. Evidence that the Defendants conducted other similar corporate campaigns with the purpose of "destroying" other companies goes to the very core of a central dispute of fact in this action and is not a collateral matter. Therefore, Proulx's testimony cannot be excluded under Rule 403.

13

## CONCLUSION

For the foregoing reasons, the portion Defendants' Motion in Limine to Exclude Evidence pursuant to Federal Rules of Evidence 401, 402, and 403 (Docket No. 111) regarding evidence of "other corporate campaigns" is denied.

                                              /s/  *REP*
                              Robert E. Payne
                              Senior United States District Judge

Richmond, Virginia
Date: October 14, 2008