

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SMITHFIELD FOODS, INC.
and SMITHFIELD PACKAGING
COMPANY,

    Plaintiffs,

v.                            Civil Action No. 3:07cv641

UNITED FOOD AND COMMERCIAL
WORKERS INTERNATIONAL UNION,
et al.,

    Defendants.

## MEMORANDUM OPINION

The Plaintiffs ("Smithfield" have filed three "Motions for Judgment on the Pleadings" which seek to strike four of the Defendants' asserted affirmative defenses. In the "Motion for Judgment on the Pleadings on Defendants' First Amendment Affirmative Defenses" (Docket No. 90), Smithfield contends that the First Amendment does not protect extortionate speech, and that the Noerr-Pennington doctrine does not provide a defense to Smithfield's claims. Second, in their Motion for Judgment on the Pleadings on Defendants' Tortious Interference Affirmative Defenses" (Docket No. 92), Smithfield claims that "truth" is not an affirmative defense to their tortious interference claims. Finally, in the "Motion for Judgment on the Pleadings on

Defendants' Unclean Hands Affirmative Defenses" (Docket No. 91), Smithfield contends that "unclean hands" cannot serve an affirmative defense in the civil RICO context, and that the conduct which forms the basis of the Defendants' unclean hands defense lacks a sufficient "nexus" to the subject matter of this action so that, even if unclean hands is a defendant to a RICO claim, the defense is not available here.

## BACKGROUND

Smithfield Foods, Inc. is a Virginia corporation with its principal place of business in Smithfield, Virginia. Amended Compl. at ¶ 8. Smithfield Packaging Company is a wholly-owned subsidiary of Smithfield Foods. Id. at ¶ 9. Smithfield's largest asset is its pork processing plant in Tar Heel, North Carolina. Id. The Tar Heel plant is the world's largest pork processing plant and employs 4,650 hourly employees. According to the Complaint, the UFCW has been unsuccessfully trying for well over a decade to become the bargaining representative for the employees of the Tar Heel plant. Id.

The National Labor Relations Act ("NLRA") 29 U.S.C.A § 158(a)(3) permits a union to become a collective bargaining representative for an employer's employees if the union prevails in an election certified by the National Labor

Relations Board ("NLRB"). The NLRA also permits an employer, under certain circumstances, to voluntarily recognize a union. See 29 U.S.C.A. § 158(a)(3) (2008).

According to the Complaint, the UFCW publicly announced a "corporate campaign" against Smithfield in June 2006. Corporate campaigns include a "wide and indefinite range of legal and potentially illegal tactics used by unions to exert pressure on an employer . . . [including] litigation, political appeals, requests that regulatory agencies investigate and pursue employer violations of state and federal law, and negative publicity campaigns aimed at reducing the employer's goodwill with employees, investors, or the general public." Food Lion, Inc. v. UFCW, 103 F.3d 1007, 1014 n.9 (D.C. Cir. 1997). The alleged object of the Defendants' campaign against Smithfield was to force Smithfield to recognize the UFCW as the collective bargaining representative of the employees at the Tar Heel plant and agree to a first contract or to force the company to become so unprofitable as to necessitate cessation of business operations. (Amended Compl. at ¶¶ 38-41).

## DISCUSSION

I. **The Standard For Assessing A Motion For Judgment On The Pleadings Under Rule 12 (c)**

When deciding a motion for judgment on the pleadings made pursuant to Fed. R. Civ. P. 12(c) must apply the same standard that is applied when ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). <u>Burbach Broad. Co. v. Elkins Radio Corp.</u>, 278 F.3d 401, 405-06 (4th Cir. 2002); <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999). In considering a motion to dismiss under Rule 12(b)(6) or Rule 12(c), the Court must assume that the allegations in the non-moving party's pleadings are true and construe all facts in the light most favorable to the non-moving party. <u>Smurfit-Stone Container Enters. v. Nat'l Interstate Ins. Co.</u>, 2008 U.S. Dist. LEXIS 67645, at *12 (E.D. Va. Sept. 5, 2008); <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992).

II. **The Defendants' First-Amendment Defense**

Numerous courts have held that the government may proscribe "threats, extortion, blackmail and the like," despite "their expressive content." <u>Gresham v. Peterson</u>, 225 F.3d 899, 909 (7th Cir. 2000) These categories of speech are "properly punished every day under statutes prohibiting extortion, blackmail and assault without

4

consideration of First Amendment issues." United States v. Irving, 509 F.2d 1325, 1331 (5th Cir. 1975) (citation omitted).

These considerations have lead at least two Circuit Courts to conclude that "[i]t may categorically be stated that extortionate speech has no more constitutional protection than that uttered by a robber while ordering his victim to hand over the money, which [has] no protection at all." United States v. Hutson, 843 F.2d 1232, 1235 (9th Cir. 1988) (quoting United States v. Quinn, 514 F.2d 1250, 1268 (5th Cir. 1975), cert. denied, 424 U.S. 955 (1976)). As such, it appears that "[t]he First Amendment does not protect extortion." United States v. Boyd, 231 Fed. Appx. 314, 315 (5th Cir. 2007). Therefore, even if the Defendants' actions consisted entirely of speech-based activism, the First Amendment cannot serve as an affirmative defense to the Plaintiffs' claims.

III.   **The Defendants' Noerr-Pennington Defense**

Under the Noerr-Pennington doctrine, bona fide efforts to obtain or influence legislative, executive, judicial or administrative actions are immune from civil liability. See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); United Mine Workers v. Pennington, 381 U.S. 657 (1965). It has been recognized

5

that "threats, intimidation, and other coercive measures" do not qualify for Noerr-Pennington immunity. Sacramento Coca-Cola Bottling Co. v. Chauffeurs, Teamsters & Helpers Local No. 150, etc., 440 F.2d 1096, 1099 (9th Cir. 1971); Central Telecommunications, Inc. v. TCI Cablevision, Inc., 800 F.2d 711, 724 (8th Cir. 1986). Accordingly, if the purported effort by a party to influence or obtain government action is in reality only an attempt to interfere with the business relationships of the opposing party, the activity does not enjoy immunity. Noerr, 365 U.S. at 144, 81 S. Ct. at 533 (the "sham exception").

In assessing whether the Defendants fall under the sham exception to the Noerr-Pennington doctrine, the Court must consider the "totality of the [disputed] harassing conduct." Tizes v. Curcio, 1995 U.S. Dist. LEXIS 11368, at *15 (N.D. Ill. Aug. 9, 1995). "[S]o long as the Complaint alleges that the defendants used the petitioning process primarily, if not exclusively, to harass or to discriminate against the [plaintiffs], the Complaint states a potentially valid claim for relief, the First Amendment and the Noerr-Pennington doctrine notwithstanding." Id. at *14.

Smithfield has presented evidence to show that Defendants' conduct before the relevant municipal bodies

was committed with the intention of harassing Smithfield. The Defendants do not deny that their intent was principally to vex Smithfield. Therefore, under the settled application of the Noerr-Pennington doctrine, their appearances before municipal governments cannot be an affirmative defense to the Plaintiffs' claims.

### IV. The Defendants' Affirmative Defense To The Plaintiffs' Tortious Interference Claims

The Defendants have asserted two affirmative defenses to the Plaintiffs' tortious interference counts in the Amended Complaint. First, the Defendants contend that "truth" is a defense to a claim of tortious interference under both Virginia and North Carolina law. Second, the Defendants claim that Va. Code § 8.01-223.2 immunizes their allegedly tortious conduct.

#### A. Truth As An Affirmative Defense To Tortious Interference Under Virginia Law

The parties agree that whether "truth" can serve as an affirmative defense to tortious interference would present an issue of first impression in Virginia.

In support of its Motion, Smithfield primarily relies on the Supreme Court of Virginia's decision in Chaves v. Johnson, 230 Va. 112, 335 S.E.2d 97 (1985). In Chaves, 230 Va. at 121, 335 S.E.2d at 103, the Supreme Court of Virginia articulated five permissible affirmative defenses

7

to a claim of tortious interference: (1) legitimate business competition; (2) financial interest; (3) responsibility for the welfare of another; (4) directing business policy; and (5) the giving of requested advice. In subsequent cases, the Supreme Court of Virginia has refused to recognize additional affirmative defenses to the tort, see Lockheed Info. Mgmt. Sys. Co. v. Maximus, Inc., 259 Va. 92, 524 S.E.2d 420 (2000) (rejecting "protection of public interest" as an affirmative defense), but has apparently not categorically foreclosed the possibility that other affirmative defenses could be recognized in time.

The Defendants correctly note that the Second Restatement of Torts lists "truth" as an affirmative defense to a claim of tortious interference. The Second Restatement provides:

> One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person
>
> (a) *truthful information*, or
> (b) honest advice within the scope of a request for the advice.

Restatement (Second) of Torts § 772 (1979) (emphasis added). The Defendants contend that the Supreme Court of Virginia would follow the lead of the Second Restatement

8

and thereby permit an affirmative defense of truth in this case.

When faced with the task of predicting state law, "[a] federal court may base its prediction on canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions." Wells v. Liddy, 186 F.3d 505, 528 (4th Cir. 1999); see also Byelick v. Vivadelli, 79 F. Supp. 2d 610, 623 (E.D. Va. 1999). With this in mind, it is notable that the Supreme Court of Virginia has been willing to follow the Restatement of Torts, but has not broadly accepted all associated Restatement provisions. See Appalachian Power Company v. Sanders, 232 Va. 189, 349 S.E.2d 101 (1986) (rejecting certain sections of the Second Restatement).

Significantly, it is highly persuasive that in Chaves, the Court noted the First Amendment implications of its holding, but rejected the defendant's freedom-of-speech argument. See Chaves, 230 Va. at 121, 335 S.E.2d at 103. The Court held:

> The tort complained of here is *an intentional wrong to the property rights of another, accomplished by words, not defamatory in themselves, but employed in pursuance of a scheme designed wrongfully to enrich the speaker at the*

> *expense of the victim.* The law provides a remedy in such cases, and the constitutional guarantees of free speech afford no more protection to the speaker than they do to any other tortfeasor who employs words to commit a criminal or a civil wrong.

Id. (emphases added). Thus, in assessing the merits of a tortious interference claim, the Supreme Court of Virginia focused on the motives of the alleged tortfeasor's actions, as opposed to the veracity of the statements uttered by the tortfeasor. See id.

Moreover, it is highly significant that, in Chaves, the Supreme Court of Virginia specifically made reference to certain provisions of the Second Restatement of Torts, but nevertheless failed explicitly to incorporate the Restatement's affirmative defenses into its holding. See 230 Va. at 121, 335 S.E.2d at 103 (discussing only the Second Restatement's elements of a tortious interference claim).

Finally, it is notable that the Virginia Supreme Court has expressly declined to extend the principles of defamation law to claims for tortious interference with contract or business expectancies, thereby strengthening the inference that "truth" is irrelevant to a claim of tortious interference in Virginia. Lockheed Info. Mgmt. Sys. Co. v. Maximus, Inc., 254 Va. 408, 412, 493 S.E.2d

10

375, 377 (2000) ("[W]e have not extended principles of defamation law to claims for tortious interference with contracts and business expectancies . . . .").

### B. Truth As An Affirmative Defense To Tortious Interference Under North Carolina Law

In North Carolina, it is apparent that the relevant inquiry in a tortious interference claim is the motive behind the tortfeasor's actions, and not the veracity of the tortfeasor's statements. Under North Carolina law, "[w]hether an actor's [tortious interference claim] is justified depends upon the circumstances surrounding the interference, *the actor's motive or conduct*, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor, and the contractual interests of the other party." Embree Constr. Group, Inc. v. Rafcor, Inc., 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) (emphasis added). Nevertheless, "[g]enerally speaking, interference with contract is justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant . . . are competitors." Id. Consequently, in Embree, the Court made clear that the predominant inquiry in assessing a claim of tortious interference is the motive of the speaker. See id.; see also Peoples Sec. Life Ins. Co. v. Hooks, 322 N.C. 216,

11

221, 367 S.E.2d 647, 650 (1988) ("If the defendant's only motive is a malicious wish to injure the plaintiff, his actions are not justified.").

These decisions teach that the North Carolina courts also would not accept "truth" as a defense to a tortious interference claim.

### C. The Application of Va. Code § 8.01-223.2

The Defendants assert that Smithfield's tortuous interference claim is barred by Va. Code § 8.01-223.2. The statute provides:

> A person shall be immune from civil liability for a violation of § 18.2-499 or a claim of tortious interference with an existing contract or a business or contractual expectancy *based solely* on statements made by that person at a public hearing before the governing body of any locality or other political subdivision, or the boards, commissions, agencies and authorities thereof, and other governing bodies of any local governmental entity concerning matters properly before such body. *The immunity provided by this section shall not apply to any statements made with knowledge that they are false, or reckless disregard for whether they are false.*

(emphasis added). The statute is to be applied according to its plain language. Boyton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 926 (2006).

The undisputed conduct of the Defendants involves far more than statements made "solely" at public hearings. Moreover, the Defendants admit that much of the Smithfield

Campaign's conduct in relation to the lobbying of governmental bodies occurred outside of the confines of "public hearings." Def's Answer ¶¶ 144-57. Therefore, according to its plain language, Va. Code § 8.01-223.2 cannot serve as an affirmative defense to Smithfield's claims.

V. **The Unclean Hands Affirmative Defense In The Civil RICO Context**

The Defendants have asserted the affirmative defense of "unclean hands." The well-recognized doctrine of unclean hands prevents a plaintiff from obtaining equitable relief, if the plaintiff has been "guilty of any inequitable or wrongful conduct with respect to the transaction or subject matter sued on." WorldCom, Inc. v. Boyne, 68 Fed. Appx. 447, 451 (4th Cir. 2003). It is unclear, however, both nationally and in the Fourth Circuit, whether the doctrine of unclean hands applies in civil RICO claims.

The circuit courts are currently divided on this issue. The First Circuit, in Roma Construction Co. v. Russo, 96 F.3d 566, 571-75 (1st Cir. 1996), suggested that the doctrine does not apply, but ultimately concluded that the plaintiffs did not have "unclean hands." The Eleventh and Seventh Circuits have opined that the doctrine may

13

apply in civil RICO actions. See Sikes v. Teleline, Inc., 281 F.3d 1350, 1366 n.41 (11th Cir. 2002); Laborers' International Union of North America v. Caruso, 197 F.3d 1195, 1197-98 (7th Cir. 1999). The Third Circuit also has applied the doctrine of unclean hands in the context of determining whether an injunction, after trial, can be denied. Northeast Women's Center, Inc. v. McMonagle, 868 F.2d 1342, 1354-55 (3d Cir. 1989).

Notwithstanding, the uncertainty at the circuit court level, it is persuasive that "an overwhelming majority" of district courts to consider the issue have concluded that "the defense of unclean hands is not available in civil RICO actions." Florida Software Sys. v. Columbia/HCA Healthcare Corp., 1999 U.S. Dist. LEXIS 15294, at *6 (M.D. Fla. Sept. 16, 1999); see, e.g., Local 851 of the Int'l Bhd. of Teamsters, 1998 U.S. Dist. LEXIS 3779, at *5, 1998 WL 178873, at *2 (E.D.N.Y 1998); Bieter Co. v. Blomquist, 848 F. Supp. 1446 (D. Minn. 1994); In re National Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig., 636 F. Supp. 1138 (C.D. Cal 1986).

Moreover, it is significant that courts have historically looked to antitrust law in interpreting RICO, see In re National Mortgage Equity Corp., 636 F. Supp. at 1155, and it is clear that the doctrine of unclean hands is

14

not a defense to a civil antitrust suit. See Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 139 (1968). On this basis, a number of courts have declared that the defense of unclean hands does not apply in the civil RICO context. See Bieter Co. v. Blomquist, 848 F. Supp. At 1449.

Finally, the Supreme Court has held that the affirmative defense of unclean hands has "been rejected" in the context of statutes "where Congress [has] authorize[d] broad equitable relief to serve important national purposes." McKennon v. Nashville Banner Publ. Co., 513 U.S. 352, 357 (1995) (addressing unclean hands in the context of an AEDA claim). RICO is such a statute. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991) (RICO was "designed to advance important public policies").

The persuasive weight of authority is that the affirmative defense of unclean hands is not available in a civil RICO action and cannot be asserted by the Defendants as an affirmative defense.[1] Of course, the existence of inequitable conduct may be pertinent in shaping equitable relief, if there is a finding of liability. See, e.g.,

---

[1] Accordingly, whether Smithfield's allegedly inequitable conduct has a sufficient "nexus" to the pending matter to qualify for an unclean hands defense is of no consequence.

15

Heldman v. United States Lawn Tennis Asso., 354 F. Supp. 1241, 1249 (S.D.N.Y. 1973).

## CONCLUSION

For the foregoing reasons, the Defendants' Motions for Judgment on the Pleadings (Docket Nos. 90, 91, 92) will be granted.

It is so ORDERED.

/s/ *REP*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 14, 2008

16