

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SMITHFIELD FOODS INC.,
et al.,

    Plaintiffs,

v.                     Civil Action No. 3:07cv641

UNITED FOOD AND COMMERCIAL
WORKERS INTERNATIONAL UNION,
et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the Consolidated Motion of all Defendants to Amend Answers (Docket No. 175). For the reasons set forth below, the motion will be denied.

## BACKGROUND

Smithfield Foods, Inc. is a Virginia corporation with its principal place of business in Smithfield, Virginia. Amended Compl. at ¶ 8. Smithfield Packaging Company is a wholly-owned subsidiary of Smithfield Foods. Id. at ¶ 9. Smithfield's largest asset is its pork processing plant in Tar Heel, North Carolina. Id. The Tar Heel plant is the world's largest pork processing plant and employs approximately 4,650 hourly employees. According to the Complaint, the UFCW has been unsuccessfully trying for well over a decade to become the bargaining representative for the employees of the Tar Heel plant. Id.

1

Case 3:07-cv-00641-REP   Document 275   Filed 10/21/08   Page 2 of 17 PageID# 3796

The National Labor Relations Act ("NLRA") 29 U.S.C.A §
158(a)(3) permits a union to become a collective bargaining
representative for an employer's employees if the union
prevails in an election certified by the National Labor
Relations Board ("NLRB").  The NLRA also permits an employer,
under certain circumstances, to voluntarily recognize a union.
See 29 U.S.C.A. § 158(a)(3) (2008).

According to the Complaint, the UFCW publicly announced a
"corporate campaign" against Smithfield in June 2006.
Corporate campaigns include a "wide and indefinite range of
legal and potentially illegal tactics used by unions to exert
pressure on an employer . . . [including] litigation,
political appeals, requests that regulatory agencies
investigate and pursue employer violations of state and
federal law, and negative publicity campaigns aimed at
reducing the employer's goodwill with employees, investors, or
the general public." Food Lion, Inc. v. UFCW, 103 F.3d 1007,
1014 n.9 (D.C. Cir. 1997).  The alleged object of the
Defendants' campaign against Smithfield was to force
Smithfield to recognize the UFCW as the collective bargaining
representative of the employees at the Tar Heel plant and
agree to a first contract or to force the Plaintiffs to become
so unprofitable as to necessitate cessation of business
operations. Amended Compl. at ¶¶ 38-41.

Smithfield has asserted four claims under the
Racketeering Influenced and Corrupt Organizations Act ("RICO")

2

and several state law claims.  On September 19, 2008, one month after the close of fact discovery, and one month before the beginning of trial, the Defendants moved for leave to amend their Answer to assert the new affirmative defense of *in pari delicto*.  The Defendants' motion was made after the Court had ruled that the initially-asserted affirmative defense of unclean hands was not a cognizable defense to a civil RICO claim.

The Defendants' proffered affirmative defense of *in pari delicto* is based on the alleged conduct of William Merritt ("Merritt").  The Defendants contend that "there is now a growing body of evidence that Merritt, working with Smithfield and its public relations consultant, infiltrated the Justice at Smithfield Campaign; through deception gained access to, and appears to have reported back key strategy information about the campaign; and deceptively purported to speak on behalf of the campaign."  Defs' Reply at 1.  The Defendants also allege that there is "evidence that Smithfield, even in this litigation, has gone to great lengths to hide its role in Mr. Merritt's wrongful activity," and that the Defendants have recently uncovered additional evidence of Merritt's contacts with "high-level Smithfield executives."  Id. at 7 ("In fact, the critical piece of the puzzle – *direct communication between Merritt and high-level Smithfield executives* – was

only discovered after Defendants filed this motion.")
(emphasis in original).

The record shows that Merritt was retained by a public
relations consultant who worked as an independent contractor
for Smithfield. And, there is evidence that one or more
Smithfield executives were aware of Merritt's activities. For
instance, the contractor coordinated Merritt's activities and
billed Smithfield for Merritt's services and expenses.
Smithfield states that the Defendants' charges are "hotly
disputed." Pltfs' Opp. at 6. But, Smithfield does not deny
that Merritt worked for the consultant, that the consultant
billed Smithfield for Merritt's services and expenses, or that
Smithfield paid the costs. Smithfield also takes care to note
that the Defendants knew of Merritt's role as a potential
"spy" for Smithfield three months before the initial Complaint
was ever even filed in this case. Id. at 4-6.

Based on the foregoing evidence, the Defendants now seek
to assert the affirmative defense of in pari delicto; a phrase
which literally means "in equal fault." Baena v. KPMG LLP,
453 F.3d 1, 6 n.5 (1st Cir. 2006) (quoting Black's Law
Dictionary 711 (6th ed. 1990)). Accordingly, the Defendants
contend that Merritt's role in facilitating certain aspects of
the allegedly extortionate Smithfield Campaign as part of his
espionage assignment, if proved, would bar any liability on
the part of the Defendants.

4

## DISCUSSION

### I.  The Standard For Granting Leave To Amend Under Fed. R. Civ. P. 15 and Under Fed. R. Civ. P. 16

When Rule 15 is applicable, the decision to grant or deny a motion for leave to amend is within the sound discretion of the district court. Foman v. Davis, 371 U.S. 178, 182 (1962). Pursuant to Fed. R. Civ. P. 15(a), leave to amend a pleading "shall be freely given when justice so requires." Therefore, while the decision to grant a party leave to amend a pleading is within the discretion of the trial court, that discretion is limited by the general policy favoring the resolution of cases on the merits. Island Creek Coal Co. v. Lake Shore, Inc., 832 F.2d 274, 279 (4th Cir. 1987).

While the Supreme Court has long held that "this [liberal] mandate is to be heeded," the Court has also delineated factors that might warrant denial of a motion to amend. See Foman, 371 U.S. at 182. Specifically, leave to amend a pleading should be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986). Moreover, while "leave to amend ordinarily is to be liberally granted, amendments of pleadings are particularly inappropriate, *absent exceptional circumstances*, once discovery has closed." Remington Arms Co. v. Modern Muzzleloading, Inc., 1998 U.S. Dist. LEXIS 21526, at *7-8

5

(M.D.N.C. Dec. 17, 1998) (emphasis added); see also Toth v. Glazer, 163 F.R.D. 549, 549-50 (E.D. Wis. 1995) (denying the defendant's motion to amend where discovery had closed since "an amendment here would prejudice the plaintiff either by denying them [sic] discovery or by adjourning the case."); Elf Atochem, N. Am., Inc. v. United States, 161 F.R.D. 300, 301-02 (E.D. Pa. 1995) ("Motion [to amend] is untimely based on the fact that discovery is virtually complete, and trial is looming close.").

Smithfield agrees that the liberal standard provided by Rule 15 does not apply here because the existing case management orders have set deadlines for amending the pleadings and those deadlines have passed. Therefore, says Smithfield, the appropriate standard is the more stringent "good cause" rule applicable under Rule 16(b). Recently, the Fourth Circuit held that, where the case is in a posture such as this one, the "good cause" standard of Rule 16(b) applies, not the more lenient standard of Rule 15(a). Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 299 (4th Cir. 2008).

While the good cause standard is more stringent than the interest of justice standard, based on the foregoing precedent, it appears that, at least where, as here, a case is in the final trial preparation stage and discovery has closed, the analytical approach should be essentially the same under either standard.

6

II.   **Whether The Amendment Would Prejudice Smithfield**

It is axiomatic that almost every amendment of a complaint results in some prejudice to a defendant. Hence, the relevant test in each case must be whether undue prejudice would result from the amendment. _Alberto-Culver Co. v Gillette Co._, 408 F. Supp. 1160, 1163 (N.D. Ill. 1976). If an amendment requires the opponent "to engage in significant new preparation," or results in "added expense and the burden of a more complicated and lengthy trial," prejudice may be found. _Smith v. Angelone_, 111 F.3d 1126, 1134 (4th Cir. 1997). Additionally, the further a case has progressed, the more likely it is that an amendment will prejudice the non-moving party or that a court should find bad faith on the part of the movant. _Laber v. Harvey_, 438 F.3d 404, 427 (4th Cir. 2006). Furthermore, the Fourth Circuit has held that, where an amendment is offered shortly before trial, "prejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party." _Johnson_, 785 F.2d at 510; _accord_ _Hall v. Tyco Int'l, Ltd._, 223 F.R.D. 219, 262 (M.D.N.C. 2004).

Therefore, in determining whether the granting of an amendment would be prejudicial, courts are frequently guided, _inter alia_, by the following considerations: the good faith of the party seeking the amendment, _see_ _e.g._, _Vine v. Beneficial Finance Co._, 374 F.2d 627 (2d Cir. 1967), and the extent to

7

which there has been an undue delay in proffering the amendment. See, e.g., Izaak Walton League of America v. St. Clair, 497 F.2d 849 (8th Cir. 1974); Troxel Manufacturing Co. v. Schwinn Bicycle Co., 489 F.2d 968 (6th Cir. 1973).

A.  The Good Faith Of The Defendants

The Defendants contend that they have "plainly operated in good faith" in filing the motion for leave to amend. First, the Defendants filed "this motion only after the Court suggested that such an affirmative defense may be more appropriate than the defense of unclean hands initially pleaded. Second, the Defendants expeditiously filed this motion during the same week as the Court's hearing. Third, Defendants are only seeking to amend their answer to assert an affirmative defense based on information uncovered at the close of discovery." Defs' Mot. at 5.

Smithfield does not explicitly contend that the Defendants acted in bad faith by waiting until after the close of discovery to move for leave to amend. Smithfield, however, does note that the Defendants remained "conspicuously mum" about Merritt during the course of discovery, Pltfs' Opp. at 5, and that "the Defendants played a game of brinksmanship, foregoing Merritt's deposition until after the close of discovery to avoid alerting Smithfield to this issue." Id. at 4, 5. Nevertheless, Smithfield is evidently not seriously asserting the Defendants' "bad faith" as a basis for denying leave to amend, so this issue is largely irrelevant.

8

**B.  Undue Delay**

In the Fourth Circuit, it is abundantly clear that "delay alone" is insufficient to deny leave to amend.  Johnson, 785 F.2d at 509.  This is not to say, however, that the delay of a party is irrelevant.  That is particularly true when a party's motion to amend is predicated on information which has long been known to it.  As the Fourth Circuit has held, it is within the district court's sound discretion to deny leave to amend when a motion is made after the close of discovery and is based on information known to the moving party during the discovery phase of the case.  First Nat'l Bank v. Master Auto Service Corp., 693 F.2d 308, 314 (4th Cir. 1982) (denying leave to amend 19 days before trial).

As Smithfield persuasively argues, this is such a case. In their briefing, Smithfield identified various email correspondence demonstrating that the Defendants were aware, even three months *prior to the filing* of the Complaint, that Merritt was potentially acting as a "double agent" for Smithfield.  Pltfs' Opp. at 4, 5.  Accordingly, the Defendants had sufficient information at the time that they filed their Answer to assert a colorable defense of *in pari delicto*.  And, at the very least, the Defendants could have pursued this issue thoroughly in discovery.  This is true notwithstanding the fact that the Defendants claim to have only recently been able to confirm the true *extent* of Merritt's relationship with

9

Smithfield. See Romeu v Housing Inv. Corp., 548 F Supp 1312, 1319 (D.P.R. 1982) (amendment to complaint pursuant to Rule 15(a) may be denied where plaintiff had early knowledge of matter sought to be incorporated in lawsuit by amendment and could have included it in original complaint but failed to do so).

Furthermore, "it has been held that when a defense raises a new legal theory" and is filed "after the close of discovery and shortly before trial," prejudice would result to the opposing party if leave to amend were granted. See Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC, 2008 U.S. Dist. LEXIS 43928, at *9 (E.D. Va. June 4, 2008) (noting that "none of the elements of [the new defense] have been explored in discovery"). Although the Defendants are correct in noting that the affirmative defense of in pari delicto is similar to the initially-plead defense of unclean hands, the fact remains that it is an entirely "new legal theory" which is asserted after the close of discovery. See id.; Rothberg v. Rosenbloom, 808 F.2d 252, 256 (3d Cir. 1986) (unclean hands is a "corollary" of in pari delicto, but it requires an altogether different showing of fault). As such, First National Bank, Romeu, and Accent Builders all counsel that amendment at this late stage of the case is prejudicial.

Nevertheless, the Defendants have presented evidence tending to show that, during the discovery process, Smithfield and its consultant have not been entirely forthcoming with

10

documentation detailing the exact nature and extent of
Merritt's role as a "spy" for Smithfield. That conduct is
relevant to Smithfield's ability to assert prejudice as a
basis for denying leave to amend and militates against denying
the Defendant's motion on the basis of prejudice. See United
States v. Golyansky, 291 F.3d 1245, 1250 (10th Cir. 2002);
Garrison v. Baltimore & O. R. Co., 20 F.R.D. 190, 194 (W.D.
Pa. 1957) ("The timeliness of motions to amend depends upon
the facts of each case."); E. I. Du Pont de Nemours & Co. v.
United States Camo Corp., 19 F.R.D. 495, 497 (D. Mo. 1956)
("excusable oversight" can counteract an assertion of
prejudice).

By the same token, the Defendants have been slow to
develop at an earlier stage of the case the grounds for the
now proffered defense, especially given what they knew even
before this action began. Additionally, the Defendants did
not press Smithfield and its consultant forcefully when the
belatedly initiated discovery was not promptly forthcoming.
However, given the enormous task that the discovery process
has been, and considering that both sides have cooperated in
an exemplary way in managing the discovery, the Court cannot
place significant weight on the Defendants' somewhat slow
development of the "Merritt issue." Therefore, in light of
Smithfield's dilatory discovery responses on the issue, the
Court declines to exercise its discretion to deny the motion
on the basis of prejudice.

11

### III.   The Futility Of The Defense

Assuming *arguendo* that there is no prejudice, leave to amend must still be denied if amendment would be "futile." *Johnson*, 785 F.2d at 509.  A proposed amendment may be labeled futile only where it is legally insufficient on its face. *Gallegos v Bandeis Sch.*, 189 F.R.D. 256, 258 (E.D.N.Y. 1999). If a proposed amendment sets forth facts and circumstances which may entitle a plaintiff to relief, then futility is not a proper basis on which to deny the amendment.  *Id.*  Further, even where the possibility of relief is remote, leave to amend is to be permitted because it is the possibility of recovery, and not its likelihood, that guides this Court's analysis. *See id.*  The same principles inform the futility analysis regardless of whether the amendment issue is decided under Rule 15 or Rule 16.

### A.   The Defense In The Civil RICO Context

The Defendants are correct in arguing that several courts of appeals have directly considered the issue at hand and have held that *in pari delicto* is a cognizable defense to a civil RICO claim.[1]  *See Rogers v. McDorman*, 521 F.3d 381, 389 (5th Cir. 2008); *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152-56 (11th Cir. 2006); *cf.*

---

[1] As Smithfield explains, there is dicta in *Roma Constr. Co. v. Russo*, 96 F.3d 566, 570 n. 2 (1st Cir. 1996) insinuating that the First Circuit would potentially reject such a defense.  *Id.*  ("Thus we caution that nothing we have said is meant to suggest that Congress intended to create . . . an *in pari delicto* defense.").  The court, however, declined to actually rule on the issue.  *See id.*

*Chappell v. Robbins*, 73 F.3d 918, 923-25 (9th Cir. 1996) ("In passing RICO, Congress did not evince a clear legislature intent to displace common-law immunities"). This conclusion has also been echoed by a number of the district courts to address the issue. See, e.g., *Leasure v. AA Advantage Forwarders*, 2007 U.S. Dist. LEXIS 21034 (W.D. Ky. Mar. 23, 2007); *Flatau v. Stewart*, 339 B.R. 524, 527 (M.D. Ga. 2006) *cf.* *Boca Raton Cmty. Hosp. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 694 (S.D. Fla. 2006).

Thus, the clear weight of authority is that the defense of in *pari delecto* is available as a defense to a RICO charge.2

**B.    Whether The Defense Is Futile Under The Facts Asserted In The Motion**

As noted above, the equitable defense of *in pari delicto* is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct. See *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985). The Supreme Court has held that the defense of *in pari delicto* is available "only where: (1) as a direct result of his own actions, the plaintiff bears at least substantially

_____

2 As the Defendants also note, nothing in the foregoing analysis affects the straightforward applicability of the *in pari delicto* defense to the Plaintiffs' state-based claims. See *Stern v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 603 F.2d 1073 1076 n.9 (4th Cir. 1979) (applying the defense of *in pari delicto* to the state-based claims in the case). And, Smithfield has not argued otherwise.

13

equal responsibility for the violations he seeks to redress; and (2) preclusion of suit would not significantly interfere with the effective enforcement of [federal law]."  Id. at 310-11.  "The first prong of this test captures the essential elements of the classic *in pari delicto* doctrine.  The second prong, which embodies the doctrine's traditional requirement that public policy implications be carefully considered before the defense is allowed, ensures that the broad judge-made law does not undermine the congressional policy favoring private suits as an important mode of enforcing federal [statutes]."  Pinter v. Dahl, 486 U.S. 622, 632 (1988).

Application of these precepts to the facts of the present case leads to the conclusion that the Defendants' affirmative defense of *in pari delicto* would be futile.  The Defendants contend that Merritt was involved as a "spy" in only one aspect of an otherwise lengthy and extremely complex corporate campaign.  That conduct, even if linked directly to Smithfield, would not establish that Smithfield was of "equal fault" relative to the Defendants in perpetrating the allegedly extortionate scheme set forth in the RICO counts.

Furthermore, in arguing that Meritt's alleged role in the Smithfield Campaign causes Smithfield to bear "equal fault" for the harm done by the campaign, the Defendants rely heavily on correspondence indicating that Merritt recommended to Smithfield that "counter measures [sic] must be initiated immediately" in order to counteract the deleterious effect of

14

the Smithfield Campaign.   Defs' Supp. Mot. at 4.   This
asserted conduct, however, which merely details Smithfield's
worried attempts to save the company, is not illegal and does
not represent the type of inequitable, extortionate conduct
allegedly perpetrated by the Defendants.   If all that the
Defendants assert about Merritt is true, his role is not that
of a co-conspirator or a co-actor.   Rather, his role was to
gather information to enable Smithfield to oppose the
Defendants' conduct.   That, of course, is the antithesis of
conduct *in pari delicto*.

As a lesser included argument, the Defendants contend
that "Smithfield has *at least* equal responsibility as to
certain other individual and entity defendants.   For example,
there is abundant evidence in the record for a jury to find
that Merritt's role in the campaign . . . far exceeds the
alleged involvement of Defendants Andy Stern and Tom Woodruff
in the allegedly extortionate campaign." Defs' Supp. Mot. at
13, 14) (emphasis in original.   This argument, however, fails
to account for the fact that Smithfield primarily alleges that
each of the "Individual Defendants" named in the action,
including Stern and Woodruff, *conspired* to violate the law.
See Amended Compl. at ¶¶ 243, 250, 263, 270, 278.
Accordingly, these Defendants can be held liable for all
aspects of the allegedly extortionate Smithfield Campaign.
See United States v. Bonetti, 277 F.3d 441, 447 (4th Cir.
2002) (a defendant's "conspiracy conviction makes him liable

15

for all substantive offenses of his co-conspirator that are both reasonably foreseeable and in furtherance of the conspiracy"). The focus of the proffered defense in a conspiracy case is whether the plaintiff is of equal fault in the conspiracy. And, in a conspiracy, each co-conspirator is the agent of the other and is responsible for all acts done during and in furtherance of the conspiracy. Thus, the plaintiff's alleged conduct is measured in perspective of the conspiracy alleged and not in relation to the acts of individual co-conspirators.

For the foregoing reasons, even when viewing the proffered evidence of Merritt's role in the Smithfield Campaign in the light most favorable to the Defendants, the motion to amend must be viewed as futile. See, e.g., Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 766 (9th Cir. 1986) ("An amendment that would not survive summary judgment would be futile."). See, e.g., Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 766 (9th Cir. 1986) ("An amendment that would not survive summary judgment would be futile."). Leave to amend should therefore be denied.

16

## CONCLUSION

For the foregoing reasons, the Consolidated Motion of all Defendants to Amend Answers (Docket No. 175) will be denied.

It is so ORDERED.

_____/s/_____     *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
October 21, 2008

17